UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FLOYD COLE, | ) | No.  CV 04-08649-CAS(JTL) |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security, | ) | |
| Defendant. | ) | |

On October 21, 2004, Floyd Cole ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of his application for Supplemental Security Income benefits. On December 6, 2004, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on May 18, 2005, defendant filed an Answer to Complaint. On August 15, 2005, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On November 29, 2001, plaintiff filed his application for Supplemental Security Income benefits. (Administrative Record ["AR"] at 47-59). Plaintiff alleged that beginning on or about June 1, 1998, he was unable to work because he suffered from the following impairments: lower back pain, neck pain, elbow pain, lung disease, high blood pressure, heart problems, and anxiety. (AR at 70). The Commissioner denied plaintiff's application for benefits, initially and upon review. (AR at 25, 27-31). On May 10, 2002, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 34). On March 18, 2003, the ALJ conducted a hearing in Downey, California. (AR at 415-56). Plaintiff appeared at the hearing with his counsel and testified. (AR at 420-41). Jo Ann Smith, plaintiff's witness, and Freeman Leeth, Jr., a vocational expert, also testified. (AR at 441-47, 447-54).

On May 6, 2003, the ALJ issued his decision denying benefits. (AR at 19-24). In his decision, the ALJ concluded that plaintiff's neck pain, left arm numbness and weakness, and low back pain constituted severe impairments. (AR at 23). According to the ALJ, however, none of these impairments met or equaled any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (<u>Id.</u>). The ALJ further concluded that plaintiff retained the residual functional capacity to perform light work that does not involve repetitive or continuous movement of the neck, or any overhead reaching with the left arm. (<u>Id.</u>). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (<u>Id.</u>).

On June 30, 2003, plaintiff filed a timely request with the

Appeals Council for review of the ALJ's decision. (AR at 13-15). On August 27, 2004, the Appeals Council affirmed the ALJ's decision. (AR at 4-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1. The ALJ failed to properly evaluate plaintiff's mental impairment, specifically the state agency determination.

2. The ALJ failed to properly evaluate plaintiff's excess pain.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///
///

**DISCUSSION**

**A.     The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (1991); <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity. <u>Bowen</u>, 482 U.S. at 140. At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities. (<u>Id.</u> at 140-41). Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity. (<u>Bowen</u>, 482 U.S. at 141). If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. (<u>Id.</u>). If the impairment is not one that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past. (<u>Id.</u>). If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience. (<u>Id.</u> at 142). The claimant is entitled to disability benefits only if he is not able to perform such work. (<u>Id.</u>).

**B.    Rejection of Plaintiff's Pain Testimony**

Plaintiff contends that the ALJ improperly rejected plaintiff's and Jo Ann Smith's testimony regarding plaintiff's functional

1  limitations.  The ALJ found that plaintiff's testimony concerning the
2  intensity, persistence, and limiting effects of his impairments was
3  not credible. (AR at 22).  In support of his decision, the ALJ cited
4  to the lack of medical evidence to support plaintiff's claims,
5  plaintiff's conservative medical treatment, plaintiff's inconsistent
6  statements, and plaintiff's ability to perform his daily routine
7  activities.  (Id.).

8       At the hearing, plaintiff testified that he relied on volunteers
9  to assist him with his household functions, such as shopping, cooking,
10 housework, laundry, and getting dressed.  (AR at 425-26, 437).
11 Plaintiff also testified that he had no strength in his left hand,
12 limited movement in his left arm, and no feeling from his left elbow
13 to the tips of his fingers.  (AR at 426).  Plaintiff further described
14 serious back injuries and a gunshot wound he had sustained in his
15 right thigh that caused swelling, and also complained of a pinched
16 nerve in his shoulder and neck, which made it difficult for him to
17 look down.  (AR at 426-28).  Plaintiff testified that the longest
18 period time he could sit without experiencing severe pain was twenty
19 to thirty minutes; the longest time he could stand was ten to fifteen
20 minutes; and the farthest distance he could was one block.  (AR 429-
21 30).  Finally, plaintiff testified that three to four times a week he
22 had difficulty getting out of bed without pain medication and two to
23 three times a month he could not get out of bed at all.  (AR at 429).

24      An ALJ need not believe every allegation of disabling pain.  See
25 Ortega v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Where an ALJ
26 finds a claimant's claims of disabling pain not entirely credible, and
27 there is no evidence of malingering, the ALJ must set forth legally
28 permissible, specific, clear and convincing reasons for doing so.  See

Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) ("If there is medical evidence establishing an objective basis for some degree of pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the Secretary's reason for rejecting the claimant's testimony must be 'clear and convincing,' and supported by specific findings") (citations omitted). "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Morgan v. Commissioner of the Social Security Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Furthermore, "[i]t's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." Dodrill, 12 F.3d at 918 (citing Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988), rev'd on other grounds upon reh'g, 859 F.2d 1396 (9th Cir. 1988)).  An ALJ's reasons for discrediting a claimant's testimony must be sufficiently specific for the reviewing court to assess whether the decision was impermissibly arbitrary. Bunnell v. Sullivan, 947 F.2d 341, 345-56 (9th Cir. 1991).

As discussed below, the ALJ's reasons for rejecting plaintiff's credibility do not withstand scrutiny.

**1.  Absence of Objective Findings to Substantiate Plaintiff's Claims**

The ALJ cited to a lack of objective medical evidence in his decision to reject plaintiff's subjective complaints. (AR at 22). An ALJ cannot rely on an absence of disability findings to reject a plaintiff's credibility. A claimant need not produce evidence of pain other than his own subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective

6

medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. See Smolen, 80 F.3d at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain and other such symptoms," Smolen, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Id. (internal quotations omitted).

Put another way, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Social Security Ruling ("SSR") 96-7p.[1] Instead, a claimant must demonstrate only two things: "(1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments could

---

[1] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991). Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1 reasonably be expected to (not that it did in fact) produce some
2 degree of symptom." SSR 96-7p; see also SSR 96-3p.
3   In this case, the ALJ found that plaintiff's testimony regarding
4 the intensity, persistence, and limiting effects of his impairments
5 was not credible because there was no objective evidence that
6 supported plaintiff's claims of his neck, back, and left upper
7 extremity injuries. (AR at 22). But once a claimant produces medical
8 evidence of an underlying impairment, the Commissioner may not
9 discredit the claimant's testimony as to subjective symptoms merely
10 because they are unsupported by objective evidence. Lester, 81 F.3d
11 at 834. Here, the ALJ explicitly determined that plaintiff suffered
12 from severe impairments of neck pain, left arm numbness and weakness,
13 and low back pain. (AR at 23). Thus, unless there is affirmative
14 evidence showing that the plaintiff is malingering, the Commissioner's
15 reasons for rejecting the claimant's testimony must be "clear and
16 convincing." Id. General findings are insufficient; rather, the ALJ
17 must identify what testimony is not credible and what evidence
18 undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d
19 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human
20 Services, 846 F.2d 581, 584 (9th Cir. 1988).
21   Here, the ALJ determined that plaintiff's impairments could
22 reasonably produce the symptoms about which plaintiff complains, but
23 rejected plaintiff's testimony regarding his symptoms and pain. (AR
24 at 22). Notwithstanding a February 7, 2002 exam that revealed "mild,
25 involutional changes, of normal aging" in plaintiff's lumbar spine and
26 "mild-moderate, wear and tear changes, of aging discogenic narrowing"
27 of plaintiff's cervical spine (AR at 223), there is a significant
28

amount of objective evidence of plaintiff's injuries to his neck, back, and upper left extremities.

With respect to his neck injury, in November 2001, a MRI of plaintiff's cervical spine revealed a cervical spine fracture, which required plaintiff to wear a neck brace to prevent neck movements. (AR at 217).  Earlier, in May 1998, a treating physician found tenderness in plaintiff's cervical spine and a restricted range of motion. (AR at 126). With respect to plaintiff's back injury, Howard R. Bass, M.D., a treating physician, noted tenderness and spasms in plaintiff's lumbosacral spine and restricted plaintiff's range of motion to 50 percent in all directions.  (AR at 126).  Dr. Bass, a specialist in physical medicine and rehabilitation, concluded in May 1998 that "[plaintiff] is temporarily totally disabled up to and including his next visit."  (Id.).  In September of 1998, a MRI revealed a rupture of the lumbar disc.  (AR at 218).  An examination of plaintiff's back by Ismail Patel, M.D., on February 7, 2002 revealed lumbosacral tenderness and limited range of motion on flexion.  (AR at 220).   As for plaintiff's left upper extremities, medical records show that plaintiff underwent surgery for a left angle mandible fracture on January 28, 1995.  (AR 164-67).   In January of 1996, a chest, left shoulder, and left humerus x-ray  revealed evidence of a left distal clavicular deformity, a result of a prior left clavicular fracture, but no evidence of new fractures or soft tissue swelling.  (AR at 149).  Finally, an undated Physical Therapy Evaluation & Treatment Plan diagnosed plaintiff with left-sided weakness, pain, and numbness.  (AR at 294).  Thus, the ALJ erred in rejecting plaintiff's credibility on the ground that there was insufficient objective evidence of injuries to plaintiff's neck, back

and left upper extremity. These well-documented impairments, moreover, could reasonably be expected to produce the degree of pain of which plaintiff complained.

### 2. Conservative Medical Treatment

The ALJ also rejected plaintiff's credibility due to plaintiff's lack of significant or ongoing medical treatment for any condition, as well as the absence of any pain medications from his treatment record. (AR at 22). As discussed below, the ALJ's determination does not withstand scrutiny.

#### a. Lack of Medical Treatment

An ALJ may rely on a claimant's unexplained failure to seek treatment in rejecting a claimant's credibility. Smolen, 80 F.3d at 1284 (ALJ may rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment"); Bunnell, 947 F.2d at 346 (identifying claimant's failure to seek medical treatment as proper reason to discredit claimant's testimony); Fair, 885 F.2d at 603 (9th Cir. 1989) (listing proper reasons to discredit claimant's testimony and stating, "Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.").

Here, the administrative record contains voluminous treatment records for plaintiff. Plaintiff submitted medical records from Martin Luther King Medical Center from January 28, 1995 to August 23, 2000, during which time he sought treatment approximately eighteen

times.[2] (AR at 142-76). Plaintiff also submitted medical records from Family Medical Health & Rehabilitation Center for the period June 2, 1998 to June 22, 1999, during which time plaintiff sought treatment on fourteen occasions. (AR at 119-41). Finally, plaintiff submitted treatment records from Humphrey Comprehensive Health Center from September 20, 1999 to October 3, 2002, during which time he sought treatment nineteen times. (AR 177-216, 261-268). Furthermore, the medical records show that plaintiff was the subject of both emergency care and surgery. (AR at 164-67, 203-05, 343). Thus, contrary to the ALJ's statement, plaintiff sought significant and ongoing medical treatment for his ailments.

### b. Pain Medication

Second, the ALJ found that plaintiff did not take pain medications. (AR at 22). An ALJ may reject a claimant's allegations of extreme pain where the patient uses only mild pain medication. See Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to reject patient's credibility and noting that plaintiff "has not required prescription pain medication"); see also Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility and noting pain did not require prescription medications); Ruiz v. Apfel, 24 F. Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting plaintiff's credibility and stating, "More particularly, [the ALJ] remarked that [plaintiff] had not been prescribed narcotic pain medication, as would be expected if she suffered from intense, chronic

---

[2] Subsequent to the hearing, on November 18, 2003, plaintiff supplemented the records with treatment records from King-Drew Medical Center from August 24, 1994 to September 16, 2003 and Daniel Freeman Memorial Hospital from August 15, 2003 to September 7, 2003. (AR at 277-342, 343-414).

1  pain."); Matthews v. Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993)
2  (permissible credibility factors include limited treatment and minimal
3  use of medications).

4      Contrary to the ALJ's finding, however, the record establishes
5  that plaintiff has taken a number of pain medications.  In January of
6  1996, plaintiff was prescribed Toradol, a nonsteroidal
7  anti-inflammatory drug that relieves pain and reduces swelling, that
8  is generally used to treat moderate to severe pain usually after
9  surgery.[3]  (AR at 314).  In 2001, plaintiff took Motrin for his pain.
10 (AR at 300).  On February 7, 2002, plaintiff reported taking the
11 following pain medications:  tramadol, naproxen, Tylenol #3, and Soma.
12 (AR at 218).  On August 16, 2003, subsequent to the issuance of the
13 ALJ's decision, plaintiff was medicated with Morphine and Tylenol #3
14 for his pain (AR at 343), and subsequently discharged from treatment
15 with the following medications:  Tylenol #3, Ecotrin (aspirin), and
16 Motrin (AR at 344).  Thus, the record contains many instances where
17 plaintiff has taken pain medications, some of which were prescribed.

18     **3.   Inconsistent Statements**

19     The ALJ also rejected plaintiff's credibility, in part, based on
20 inconsistent statements that plaintiff made regarding the onset of his
21 functional limitations.  (AR at 22).  Internal conflicts in a
22 claimant's statements or testimony support a finding that the claimant
23 lacks credibility.  See Light v. Social Security Administration, 119
24 F.3d 789, 792 (9th Cir. 1997) (in weighing claimant's credibility, ALJ
25 may consider "inconsistencies either in [plaintiff's] testimony or

---

[3] See http://my.webmd.com/medical_information/drug_and_herb/ default.htm (search "Find A Drug, By Name" for "Toradol"; then follow "Toradol Oral" hyperlink).

12

between his testimony and his conduct"); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony).

    First, the ALJ noted that plaintiff's testimony that his condition worsened in 2001 following a motor vehicle accident was inconsistent with his claim that he had been unable to work since 1998. (AR at 22). At the hearing, the ALJ specifically questioned plaintiff about his limitations prior to the 2001 accident:

    Q:    So before you go tin [sic] the accident, and, and suffered the neck injury, how was your condition different than it is today?

    A:    I had a little more mobility during that time period. There were, I was still limited to, especially anything physical. In the church there was nothing physical I had to lift. I haven't detailed a car since '98. And that was even before June '98. The church members kept me busy as far as detailing cars. So I would detail maybe three or four cars a week.

    Q:    Up until when?

    A:    '98.

    Q:    '98?

    A:    May of '98.

    Q:    How about between '98 and 2001?

    A:    Didn't detail any kind of cars. I didn't even wash my own car.

///

(AR at 437-39).  Thus, plaintiff testified that he was unable to work in 1998, which is consistent with his prior statements regarding the onset of his disability as June 1, 1998.  (AR at 70).

Second, the ALJ found that plaintiff's testimony that he was active in his church until 2002 conflicted with his testimony that he had been incapacitated since 1998. (Id.). Plaintiff testified that prior to his vehicle accident in May of 2001, plaintiff was the executive director of A Spiritual Enrichment Learning Foundation.  (AR at 433).  He testified that his work with the foundation and church involved a significant amount of responsibility and time:  "[After the vehicle accident in 2001], it's like someone just took my whole life away and this is what I enjoy, seven days a week.  I was pretty instrumental in keeping my children in church.  That's from Tuesday choir rehearsal and Wednesday Bible Study, Thursday and Friday prayer sessions. Plus Thursday was the addiction ministry which I was the coordinator for that particular region....  So I had the responsibility of teaching others how to teach others."  (AR at 433). Plaintiff further testified that a year prior to the hearing on March 18, 2003, he held seven different titles at the church, "from being the pastor's personal assistant down through the choir.  Whenever the church needed me, I was generally available."  (AR at 435).  Given plaintiff's significant responsibilities with his church up until one year prior to the hearing, it does not appear that plaintiff was completely incapacitated until May 2002.

Given the substantial objective evidence of plaintiff's impairments, however, the Court does not find that this inconsistency, standing alone, constitutes a sufficiently clear and convincing reason for the ALJ to reject plaintiff's credibility in total.  See, e.g.,

14

Smolen, 80 F.3d at 1279 (holding that the reviewing court must weigh all the evidence as a whole and independently determine whether the Commissioner's findings are supported by substantial evidence).

### 4. Daily Activities

Finally, the ALJ found that plaintiff did not describe any limitations that precluded him from performing activities of daily living without assistance. (AR at 22). Furthermore, Ms. Smith testified that plaintiff "had no trouble taking the bus or getting along with others." (Id.). As such, the ALJ rejected plaintiff's testimony that he suffered from disabling pain.

In evaluating a claimant's credibility, an ALJ must consider the factors that Social Security Regulation 95-5p sets forth. Those factors include the claimant's daily activities and the adjudicator's personal observation of the claimant. See SSR 95-5p. "With respect to daily activities, this court has held that if a claimant 'is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (emphasis in original) (citing Morgan, 169 F.3d at 600); see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In Fair, however, the Ninth Circuit cautioned that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair, 885 F.2d at 603.

Here, plaintiff testified in great detail regarding his inability to perform activities of daily living without assistance. Plaintiff testified that he relies on volunteers to assist him with all of his

household functions, such as shopping, cooking, housework, laundry, and getting dressed. (AR at 425-26, 437). In addition to limited movement in his left extremities (AR at 426), serious back injuries (AR at 427), swelling of his right foot (AR at 428), and pinched nerves in his shoulder and neck (426, 428); plaintiff testified that the longest period he could sit without experiencing severe pain was twenty to thirty minutes, the longest period he could stand was ten to fifteen minutes, and the farthest distance he could walk was one block. (AR 429-30). As stated above, plaintiff also testified that he had difficulty getting out of bed without pain medication and sometimes could not get out of bed at all. (AR at 429).

Second, the ALJ alleged that plaintiff's witness, Jo Ann Smith, testified that he had "no trouble" taking the bus or getting along with others. (AR at 22). Ms. Smith testified that she escorted plaintiff on the bus to his appointments. (AR at 445). Ms. Smith also testified that plaintiff could ride the bus and she assisted him with getting on and off the bus if he had "stiff moments." (Id.). Contrary to the ALJ's decision, Ms. Smith did not testify that plaintiff had no trouble getting along with others.

Even assuming that plaintiff could take the bus and get along with others with little difficulty, the ability to engage in such activities does not support the ALJ's decision to reject plaintiff's credibility that he is disabled. Taking the bus or getting along with others does not clearly translate into the ability to work. The Ninth Circuit has found that similar activities, such as driving a car or limited walking for exercise, do not "in any way detract from [a claimant's] credibility as to [his] overall disability." Vertigan, 260 F.3d at 1050; see also Howard v. Hecklar, 782 F.2d 1484, 1488 (9th

Cir. 1986) (claim of pain-induced disability not gainsaid by capacity to engage in periodic travel). The Ninth Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to be disabled. See Fair, 885 F.2d at 603 ("The Social Security Act does not require that claimant be utterly incapacitated to be eligible for benefits."); see also Vertigan, 260 F.3d at 1050 ("One does not need to be utterly incapacitated in order to be disabled."). As such, substantial evidence does not exist to support the ALJ's finding that plaintiff's alleged ability to engage in daily activities, take the bus, and get along with others rendered his testimony not credible.

In sum, the ALJ does not present substantial evidence to support his determination that plaintiff's testimony regarding his functional limitations was not credible by virtue of his alleged ability to engage in a daily routine.

**C.    Remand is Required to Remedy Defects in the ALJ's Decision**

The choice of whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the Court. McAlister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision, and where the record should be developed more fully. McAlister, 888 F.2d at 603; Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). An award of benefits is appropriate where no useful purpose would be served by further administrative proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir. 1995), where the record has been fully developed, see Schneider v. Commissioner of the Social Security Administration, 223

F.3d 968, 976 (9th Cir. 2000).

Here, the Court finds remand appropriate. The reasons cited by the ALJ in support of his rejection of plaintiff's credibility are insufficient. On remand, the ALJ must provide clear and convincing reasons in support of his finding that plaintiff's allegations regarding his limitations are not fully credible.[4]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS the case for further administrative proceedings consistent with the Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2005

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff has raised another claim of error regarding the ALJ's decision, namely, that the ALJ failed to properly evaluate plaintiff's mental impairment. As explained above, the ALJ's error in assessing plaintiff's credibility constitutes sufficient reason to remand this case. Depending on the outcome of the proceedings on remand, the ALJ should address plaintiff's remaining issues at that time.